**In re Thomas Cullen DAVIS and Karen Joyce Davis, Debtors.**

**Thomas Cullen DAVIS, Plaintiff,**

v.

**Sandra DAVIS, Defendant.**

**Bankruptcy No. 487–41796–MT–11.**
**Adv. No. 394–3070.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Aug. 5, 1994.

Kevin T. White, Hesse & Jones, Dallas, TX, for plaintiff.

St. Clair Newbern, III, Law Offices of St. Clair Newbern, III, Ft. Worth, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Bankruptcy Judge.

Sandra Davis, the former spouse of the debtor, Thomas Cullen Davis, moves the court to order the United States Marshal to seize and sell the debtor's homestead in Fort Worth, pursuant to the Texas turnover statute, Texas Civ.Prac. & Rem.Code § 31.-002(a).[1] The debtor contends that Ms. Davis cannot use the Bankruptcy Code to preempt the Texas protection of his homestead from execution on a judgment, even a judgment for family support.

In January 1984, Mr. Davis purchased, with proceeds from his father's estate, a house for $750,000. On July 2, 1987, Mr.

---

1. Bankruptcy Rule 7069 makes applicable Fed. R.Civ.P. 69, which makes applicable the state execution statute.

Davis and his current wife, Karen Davis, filed a petition under Chapter 11 of the Bankruptcy Code in the Fort Worth Division of this court. They filed schedules of assets and liabilities in which they elected exemptions under non-bankruptcy law, claiming certain property, including the house,[2] as exempt under the laws of the state of Texas. They scheduled the value of their homestead at $500,000. No liens encumbered the property. No party objected, and the court allowed the exemptions.

Ms. Davis filed this adversary proceeding on July 30, 1987, to determine the dischargeability of certain family support obligations under 11 U.S.C. § 523(a)(5). On November 19, 1991, the court entered an agreed judgment declaring that $250,000 of support and $50,000 of related attorneys' fees constituted non-dischargeable debt under § 523(a)(5). Mr. Davis neither paid that support obligation nor offered a payment schedule or plan; he offers no explanation. Ms. Davis seeks to have the homestead sold to pay Mr. Davis' non-dischargeable family support obligations.

Process to enforce the agreed judgment for the payment of money, on the non-dischargeable family support obligations, is by writ of execution. Fed.R.Civ.P. 69(a). Rule 69(a) provides that the procedure on execution shall be in accordance with the practice and procedure of the state of Texas, "except that any statute of the United States governs to the extent it is applicable." *Id.*

Ms. Davis does not contend that any provision of the Bankruptcy Code directs the method or procedure for the execution of the $300,000 judgment. Ms. Davis does not assert that the debtor's homestead, having been exempted from the bankruptcy estate, remains property of the estate subject to a turnover to a trustee under 11 U.S.C. § 542 and a sale under § 363. The court accordingly applies the Texas practice and procedure as made applicable by Rule 69(a).

Ms. Davis invokes the Texas turnover statute in aid of the execution of the judgment but contends that § 522(c)(1) of the Bankruptcy Code constitutes a federal statute that preempts the Texas statute's protection of exempt property. Mr. Davis counters that the Texas turnover statute cannot be employed because real estate is subject to levy and that the Bankruptcy Code does not override or preempt the Texas homestead exemption.

The Texas turnover statute provides in pertinent part:

(a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that:

(1) cannot readily be attached or levied on by ordinary legal process; and

(2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

(b) The court may:

(1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control together with all documents or records related to the property, to a designated sheriff or constable for execution;

Texas Civ.Prac. & Rem Code §§ 31.002(a) and (b)(1).

▮ The granting or denying of an application for turnover order under § 31.002 is addressed to the discretion of the trial court. *Barlow v. Lane*, 745 S.W.2d 451 (Tex.App.—Waco 1988).

The statute contains several requirements. First, Ms. Davis must be a judgment creditor. On November 19, 1991, this court entered a judgment in favor of Ms. Davis, making her a judgment creditor. Second, the judgment creditor must seek assistance from "a court of appropriate jurisdiction." Tex.Civ.Prac. & Rem.Code § 31.002(a). Subsection (d) of § 31.002 permits the judgment creditor to seek this assistance in the same proceeding in which the judgment is

---

**2.** Ms. Davis disputes whether Mr. Davis' current wife owns an interest in the homestead. See Memorandum in Law in Support of Application for Turnover Order and Other Relief in Aid of Judgment, p. 2.

rendered. She has done that; this is a court of appropriate jurisdiction. Third, the debtor must own the property with which the judgment creditor seeks to satisfy her judgment. Mr. Davis owns the property.

Two further requirements restrict the type of property subject to a court-ordered turnover under § 31.002 to satisfy judgments. The first requirement is that the property "cannot readily be attached or levied on by ordinary legal process." Tex.Civ.Prac. & Rem.Code § 31.002(a)(1). The second requirement is that the property "is not exempt from attachment, execution, or seizure for the satisfaction of liabilities." Tex.Civ. Prac. & Rem.Code § 31.002(a)(2).

### Ordinary Legal Process

■ Ms. Davis relies on *Pace v. McEwen*, 617 S.W.2d 816, 819 (Tex.App. 14 Dist.1981),[3] to meet the first requirement. She argues that Mr. Davis' assertion of the homestead exemption "justifies this turnover proceeding even though real property is generally subject to attachment or levy by ordinary legal process." The *Pace* court held that if the debtor's property was his homestead and therefore exempt, "it certainly could not readily be attached or levied on by ordinary legal process." *Id.* The *Pace* court reasoned that a creditor should not be required to insist on a forced sale under a writ of execution and run the risk of a damages award in a suit for wrongful execution on exempt property. Indeed, a creditor should not be required to exhaust in vain every remedy before seeking turnover relief.

■ Logically, if state law through its exemption provisions bars levy or attachment of exempt property, that property cannot be readily attached or levied. Yet, the statute addresses the exemption protection in its next requirement. The court must give meaning to each requirement of the statute. *See Woodfork v. Marine Cooks & Stewards Union*, 642 F.2d 966, 970–71 (5th Cir.1981). The court therefore defers the analysis of the property's exempt status to the second re-

quirement and reads the first requirement as addressing whether a particular type of property is ordinarily subject to levy. Real property is a type of property ordinarily subject to levy.

Another Texas court has analyzed this requirement with emphasis on how "readily" property may be attached or levied. In *Hennigan v. Hennigan*, the court found that an attorney's testimony that he did not intend to voluntarily pay the judgment and his refusal to attend two depositions concerning his assets "made it abundantly clear that his moneys could not be *readily* attached." 666 S.W.2d 322, 324 (Tex.App. 14 Dist.1984). Similarly, Ms. Davis asserts that Mr. Davis would resist a forced sale, but she has made no levy attempts. The court is not persuaded that a debtor resistant to a forced sale creates the type of situation contemplated by the statute in which property cannot readily be attached or levied.

■ The statute grants to judgment creditors a remedy for reaching property of a debtor where the traditional remedies are inadequate. *See United Bank Metro v. Plains Overseas Group*, 670 S.W.2d 281 (Tex. App. 1 Dist.1983); *Steenland v. Texas Commerce Bank Nat. Ass'n*, 648 S.W.2d 387 (Tex. App. 12 Dist.1983).

The purpose of the turnover statute is stated in the Texas House and Senate Committee Reports:

The traditional methods of reaching property of a judgment debtor to satisfy a judgment have been found inadequate in cases where the judgment debtor has property outside the State of Texas, where the judgment debtor owns property interest in such items as contract rights receivable, accounts receivable, commissions receivable, and similar acts to property or rights to receive money at a future date. Additionally, there are inadequacies in existing procedures where negotiable instruments, corporate stocks, corporate securities and the like

---

**3.** This court was actually applying Tex.Rev.Civ. Stat. art. 3827a. That statute has been recodified without substantive change as Tex.Civ.Prac. & Rem.Code § 31.002. See Act of June 13, 1979, ch. 671, sec. 1, 1979 Tex.Gen.Laws 1555, 1555, repealed by Act of June 16, 1985, ch. 959, sec. 9(1), 1985 Tex.Gen.Laws 3242, 3222. Other cases cited in this discussion also address the earlier statute. This court will refer only to the statute as it is currently codified.

are owned by the judgment debtor but secreted by the judgment debtor in such a fashion that they cannot be found for execution by a levying officer.

\* \* \* \* \* \*

[The statute] proposed to put a reasonable remedy in the hands of a diligent judgment creditor, subject to supervision of the Court, and establish procedures for reaching the types of property and property interests described above.

Judge David Hittner, "Texas Post–Judgment Turnover and Receivership Statutes," 45 Tex.Bar J. 417 (1982). The turnover statute has been used to reach corporate stock in the hands of third parties and held out of state in *Childre v. Great Southwest Life Ins. Co.,* 700 S.W.2d 284 (Tex.App. 5 Dist.1985); shares of stock and accounts receivable where the debtor refused to attend two depositions regarding his assets in *Arndt v. National Supply Co.,* 650 S.W.2d 547 (Tex.App. 14 Dist. 1983); an interest in a cause of action in *Associated Ready Mix, Inc. v. Douglas,* 843 S.W.2d 758 (Tex.App.—Waco 1992); and an interest in future rental payments in *Copher v. First State Bank of Pittsburgh, Texas,* 852 S.W.2d 738 (Tex.App.—Fort Worth 1993).

Real property is generally subject to attachment or levy by ordinary legal process. Ms. Davis does not dispute that. Judge Hittner's analysis of the legislative history and the case law demonstrate that the turnover statute was created for reaching property *not* generally subject to attachment or levy. The potential for Mr. Davis to resist that relief does not alter the status of the property nor subject it to this supplemental means for relief. Ms. Davis has not satisfied the subsection (a)(1) requirement of § 31.002.

### Exempt Property

■ Subsection (a)(2) of § 31.002 requires that the property "is not exempt from attachment, execution, or seizure for the satisfaction of liabilities." Tex.Civ.Prac. & Rem. Code § 31.002(a)(2). Under Texas law, the homestead is "exempt from attachment, execution, and forced sale for the payment of debts." Texas Property Code § 41.002(a); *see* Tex. Const. art. XVI § 50.

Therefore, the Texas turnover statute does not appear to be available. Ms. Davis contends however that § 522(c)(1) preempts the Texas statutory shield of the homestead from execution on a non-dischargeable family support judgment. She argues that if a debtor's failure to pay family support obligations results in a judgment under § 523(a)(5) of the Bankruptcy Code, § 522(c)(1) nullifies the state exemption.

Section 522(c)(1) provides, in pertinent part:

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—

(1) a debt of a kind specified in section 523(a)(1) or 523(a)(5) of this title;

11 U.S.C. § 522(c)(1). Ms. Davis asserts that to the extent that § 522(c)(1) governs, Mr. Davis' homestead could be sold to pay the § 523(a)(5) judgment and, therefore, she has satisfied § 31.002(a)(2).

Section 522(c)(1) does not apply through Rule 69(a). The advisory committee notes to Rule 69(a) elaborates on the clause regarding the application of United States statutes. "Statutes of the United States *on execution,* when applicable, *govern* under this rule." Notes of Advisory Committee on Rules, 1937 Adoption, Note to Subdivision (a) (emphasis added). As previously discussed, § 522(c) is not a statute on execution. Furthermore, the note lists specific execution statutes that govern. While this list is not intended to be comprehensive, 11 U.S.C. § 522(c) is not included. The note recognizes that the execution procedure does not effect continued provisions of federal exemption statutes. Federal statutes may exempt property from execution but those statutes constitute governing statutes on execution only if Congress so provided.

■ Ms. Davis argues, however, that § 522(c)(1) preempts the exemption protection in the Texas turnover statute. The Fifth Circuit in *First Gibraltar Bank, FSB v. Morales,* recently analyzed the federal pre-

emption doctrine, recognizing that preemption is premised on a determination of congressional intent to displace the police power of the states. 19 F.3d 1032 (5th Cir.1994). Congress must have, therefore, specifically intended that § 522(c)(1) would preempt state execution statutes' provisions regarding state exemptions. The court further recognized that when Congress legislates in a field of activity traditionally regulated by the states, the preemption analysis begins with a presumption against preemption unless that was the "clear and manifest purpose of Congress." *Id.*, at 1039 (quoting *California v. ARC Am. Corp.*, 490 U.S. 93, 101, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989)). The Supreme Court has recognized real property law as "a matter of special concern to the states." *Id.*, at 1039 (citing *Fidelity Fed. Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982)). Thus, this court presumes that § 522(c)(1) does not preempt the exemption provision of the Texas turnover statute.

■ Ms. Davis has not rebutted that presumption. The court must look to the Bankruptcy Code to determine if Congress preempted the exemption provision of the state execution statute. Where the statutory scheme of the Code is coherent and consistent, the court generally need not inquire beyond the statute's language. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1029–30, 103 L.Ed.2d 290 (1989). The court must read § 522(c)(1) consistently with the entire section and the Code as a whole. *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988).

The Code provides that, upon the commencement of a bankruptcy case, all legal and equitable interests of the debtor in property become part of the bankruptcy estate. 11 U.S.C. § 541; *Matter of Walden*, 12 F.3d 445, 448 (5th Cir.1994). A debtor may, however, exempt certain property from the estate, placing that property beyond the reach of claims of creditors. 11 U.S.C. § 522; *Walden*, 12 F.3d at 448. Once the court has declared the property exempt, it is no longer part of the bankruptcy estate.

Section 522(b) permits a debtor to exempt property under either the federal exemptions enumerated in § 522(d), if the subject state authorized, or those available under state or other federal law. Texas has authorized debtors to select the federal exemptions under § 522(b)(1). *Matter of Volpe*, 943 F.2d 1451, 1452 (5th Cir.1991). Accordingly, Mr. Davis could elect the "federal" exemptions specified in § 522(d) or the "state" exemptions under § 522(b)(2). Mr. Davis elected the "state" exemptions. Under Texas law, his homestead is exempt. Texas Property Code § 41.002(a). Thus, the homestead is no longer property of the estate.

Section 522(c)(1) provides that "property exempted under this section" is not liable for pre-petition debts of the debtor "except a debt of a kind specified in section 523(a)(1) or 523(a)(5) of this title." 11 U.S.C. § 522(c)(1).[4] Mr. Davis' debt to Ms. Davis is a debt under § 523(a)(5). Ms. Davis argues that the injunction against liability under § 522(c)(1) does not, therefore, bar execution of the judgment against the Texas homestead. She is correct in that regard. She argues further, however, that § 522(c)(1) permits execution of the § 523(a)(5) judgment against the Texas homestead.

Section 522(c) does not affect § 523(a)(5) debts. For that type of debt, § 522(c) neither creates liability nor protects exempt property from liability. Instead, § 522(c) affects all debts except those specified in subsections (c)(1), (c)(2) and (c)(3).[5] For illustrative purposes, assume Mr. Davis had debts A through Z, with Z being the § 523(a)(5) debt to Ms. Davis and the only non-dischargeable debt. Section 522(c)(1) specifies that Mr.

---

**4.** This case involves only § 523(a)(5) debts. Mr. Davis contends the statute must be read to refer only to property exempt by subsection 522(d). If Congress had meant to limit the language to a subsection, it would have so provided. *See e.g.*, 11 U.S.C. § 522(b)(1).

**5.** This discussion addresses only subsection (c)(1), not (c)(2) and (c)(3).

Davis' exempt property is not liable for debts A through Y. It excludes liability for debt Z from that protection. Section 522(c)(1)'s injunctive provision does not extend to liability for § 523(a)(5) judgments.

The section does not create or establish liability. It enjoins most liability imposed by non-bankruptcy law upon exempt property but does not enjoin all liability for all debts. While it does not impose an injunction against liability on exempt property for § 523(a)(1) or (a)(5) debts, it also does not prevent non-bankruptcy law from imposing such an injunction. Indeed, Texas has done so.

Had Congress intended to make exempt property liable for § 523(a)(5) family support obligations, it could have affirmatively legislated. For example, if Congress was concerned that the states have not adequately provided mechanisms for the collection of family support obligations, it could amend subsection § 522(c)(1) to read (**boldface**):

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case.

(1) **Notwithstanding this or any other federal or state injunction of liability for exempt property, exempt property shall be liable for debts of a kind specified in section 523(a)(5) of this title.**

Rather than affirmatively subjecting exempt property to liability for family support obligations, Congress did not extend the injunction against liability for family support obligations. This permits states like Texas to enact broader injunctions of liability of exempt property, protecting exempt property even from non-discharged family support obligations.

Section 522(c)(1) neither establishes nor governs any procedure for execution on property. Execution on judgments under 11 U.S.C. §§ 523(a)(1) and (a)(5) remains a matter of non-bankruptcy practice and procedure. Fed.R.Civ.P. 69. Ms. Davis may execute her family support judgment on Mr.

Davis' homestead if Texas law permits. Texas law does not authorize a court-directed turnover and sale of exempt property. Under Texas homestead exemption law, the property would not be subject to the Texas turnover statute, even to satisfy Mr. Davis' conceded family support obligations. Section 522(c)(1) does not supersede or preempt the provision of the Texas turnover statute providing that a court may not employ the statute to execute on a money judgment against exempt property.

In sum, the Texas homestead ceased to be property of the bankruptcy estate when the claim of exemption became effective. The trustee could not use or sell the property. The § 522(c) bar of liability did not apply to the homestead with respect to the debtor's non-discharged family support debt under § 523(a)(5). The property, without the protection of the § 522(c) injunction, passed from the estate back to the debtor. The § 523(a)(5) creditor is left with her non-bankruptcy remedies. When Ms. Davis takes her non-discharged family support judgment to state court in Texas, the state court will not permit execution against Mr. Davis' homestead because of the Texas exemption. That she is left without a remedy against the $500,000 unencumbered asset is a matter for the Texas legislature to address.

This court must question why Texas continues to permit that broad exemption. Mr. Davis concedes that he could sell the house, pay the expenses of sale, pay his family support obligations in full and still have over $180,000 cash to invest in a house for himself and his present wife. Nevertheless, Texas law permits him to shield the entire $500,000 value of the unencumbered house. Texas could provide a remedy by limiting the amount of homestead equity available for exemption by a debtor. Congress could also provide a remedy by affirmatively limiting state exemptions available under § 522(b)(2). But this court must apply the statutes as it finds them. *King Ranch, Inc. v. United States*, 946 F.2d 35, 37 (5th Cir.1991).

Based on the foregoing,

**IT IS ORDERED** that Ms. Davis' motion for a turnover is **DENIED.**