**In re Thomas Cullen DAVIS and Karen Joyce Davis, Debtors.**

**Thomas Cullen DAVIS,
Plaintiff–Appellee,**

v.

**Sandra DAVIS, Defendant–Appellant.**

**Civ. A. No. 3:94–CV–2024–D.**

**Bankruptcy No. 487–41796–MT–11.**

**Adv. No. 394–3070.**

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 8, 1995.

---

St. Clair Newbern, III, Ft. Worth, Tex., for defendant-appellant.

R. Steven Jones, Ronald R. Payne (argued), and Ted S. Byers of Hesse & Jones, Dallas, Tex., for plaintiff-appellee.

FITZWATER, District Judge:

This appeal presents the question whether 11 U.S.C. § 522(c)(1), which provides that exempt property is liable for § 523(a)(5) debts (family support obligations), preempts Texas homestead law. The bankruptcy court held that it does not. *In re Davis,* 170 B.R. 892 (Bankr.N.D.Tex.1994). Because Texas homestead law is not preempted, the bankruptcy court's order is affirmed.

I

Defendant-appellant Sandra Davis ("Sandra") and her former husband, debtor-plaintiff-appellee Thomas Cullen Davis ("Cullen"), were divorced in 1968.[1] Pursuant to a property settlement, support and child custody agreement (the "Agreement"), and the divorce judgment ("Divorce Judgment"), Cullen agreed to make monthly payments to Sandra through January 1, 1991, and thereafter to pay her other sums subject to certain contingencies. In 1979 Cullen married his current wife, debtor Karen Joyce Davis ("Karen"). In 1984 they purchased certain real property that they occupy and claim as their homestead (the "Homestead").

In 1987 Cullen and Karen filed a voluntary chapter 7 petition, which was subsequently

---

1. Sandra was the movant in the instant application for turnover and Cullen was the respondent. For clarity, the court refers to the parties by their capacities in the original adversary proceeding and on appeal.

converted to a chapter 11 case. They elected the exemptions under nonbankruptcy law and claimed certain property, including the Homestead, to be exempt under Texas law.

Cullen commenced an adversary proceeding against Sandra, seeking a determination that his indebtedness pursuant to the Agreement and Divorce Judgment was dischargeable. Sandra counterclaimed for a ruling that the indebtedness was nondischargeable pursuant to § 523(a)(5). In 1991 the parties settled the adversary proceeding, entering into an agreed final judgment of nondischargeability (the "Judgment") that awarded Sandra the total sum of $300,000 ($250,000 plus $50,000 in attorney's fees). The Judgment declared this sum to be nondischargeable pursuant to § 523(a)(5).

In 1993 Sandra filed the instant application for turnover order and other relief in aid of judgment. Sandra based her motion on Fed. R.Bankr.P. 7069, which in turn incorporates Fed.R.Civ.P. 69. She contended that she had been unable to collect the Judgment from Cullen, and requested that the bankruptcy court order him to turn over a warranty deed that conveyed the Homestead to her, and to turn over $29,915.00 in personal property in the event the Homestead was of inadequate value to satisfy the Judgment. Sandra argued that § 522(c)(1) rendered Cullen's otherwise exempt property liable for the Judgment because the debt was nondischargeable pursuant to § 523(a)(5).

Following a hearing, the bankruptcy court held that although Sandra held a nondischargeable judgment pursuant to § 523(a)(5), she could not execute on it against Cullen's Homestead. *Davis*, 170 B.R. at 898. Sandra argued that Rule 69(a), read in conjunction with § 522(c)(1), allowed her to execute on the Judgment. Rule 69 provides that execution shall be in accordance with Texas law, "except that any statute of the United States governs to the extent it is applicable." Sec-

tion 522(c)(1) provides that exempt property remains "liable" for § 523(a)(5) family support debts. Sandra argued that § 522(c)(1) is a "statute of the United States" applicable to the Texas turnover statute, Tex.Civ.Prac. & Rem.Code Ann. § 31.002 (West 1986) (the "Turnover Statute"),[2] and thus preempts the statute's prohibition against execution on exempt property. *See Davis*, 170 B.R. at 896.

The bankruptcy court held that the Turnover Statute was unavailable to Sandra on two grounds. First, it noted that turnover is only obtainable for property that is not ordinarily subject to levy. The court reasoned that § 31.002(a)(1) and (a)(2) must be read independently. The fact that Sandra was unable to levy upon Cullen's exempt Homestead did not detract from the character of the Homestead, *i.e.*, real property, as a type ordinarily subject to levy. *Id.* at 895–96. "The potential for Mr. Davis to resist that relief does not alter the status of the property nor subject it to this supplemental means for relief." *Id.* at 896. The bankruptcy court therefore concluded that Sandra had failed to meet the requirement for turnover in § 31.002(a)(1).

Second, the bankruptcy court noted that the Texas Turnover Statute is unavailable for exempt property and that Cullen's Homestead is exempt. *Id.* The court rejected Sandra's argument that § 522(c)(1) made the Homestead liable for § 523(a)(5) debts and that she therefore met the requirements of § 31.002(a)(2). The court reasoned that Rule 69(a), which concerns the application of statutes on execution, could not be invoked to apply § 522(c)(1) to the Turnover Statute. *Id.* Because § 522(c)(1) is not an execution statute, the court reasoned, it did not govern.

The bankruptcy court held that § 522(c)(1) did not preempt the protection of exempt property found in the Turnover Statute. Relying on *First Gibraltar Bank, FSB v. Morales*, 19 F.3d 1032 (5th Cir.), *cert. denied*, ——

---

**2.** The Texas Turnover Statute provides, in pertinent part:

 (a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that:

 (1) cannot readily be attached or levied on by ordinary legal process; and
 (2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

Tex.Civ.Prac. & Rem.Code Ann. § 31.002 (West 1986).

U.S. ——, 115 S.Ct. 204, 130 L.Ed.2d 134 (1994), *vacated on other grounds,* 42 F.3d 895 (1995), the court determined that § 522(c)(1) would preempt the Turnover Statute only if Congress specifically intended to displace the police power of the State of Texas. *Davis,* 170 B.R. at 896–97. Moreover, on the basis that real property law was of "special concern to the states," the court held that there was a presumption against preemption. *Id.* at 897 (citing *First Gibraltar,* 19 F.3d at 1039). The court then looked to the language of the Bankruptcy Code and determined that although § 522(c)(1) did not bar execution on the Judgment, it also did not provide a mechanism for doing so. *Id.* at 897–98. Thus § 522(c)(1) did "not prevent non-bankruptcy law from imposing such an injunction" against execution. *Id.* at 898. Because Texas had enjoined execution, and § 522(c)(1) did not preempt Texas law, Sandra could not compel the turnover of Cullen's Homestead. *Id.* Sandra appeals.

## II

Sandra contends the order denying her turnover application must be reversed because § 522(c)(1) inferentially preempts Texas law either by the pervasive scheme of bankruptcy legislation or by an actual conflict between state and federal law in this area.

## A

■ Acting within the authority granted it by the Supremacy Clause of the Constitution, U.S. Const. art. VI, cl. 2, Congress may enact legislation that preempts state law. *California v. ARC Am. Corp.,* 490 U.S. 93, 100, 109 S.Ct. 1661, 1664, 104 L.Ed.2d 86 (1989). Preemption is most easily recognized when Congress displaces state law "by so stating in express terms," *Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Dev. Comm'n,* 461 U.S. 190, 203, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983), but may also be "implicitly contained in its structure and purpose," *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). The key inquiry in both instances is whether Congress intended that federal law supersede state law. *See Louisi-ana Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 369, 106 S.Ct. 1890, 1899, 90 L.Ed.2d 369 (1986). Courts inquiring whether a federal statute preempts state law must begin their analysis from the presumption that the police powers of the states are not to be disturbed unless this is the "clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947); *see First Gibraltar,* 19 F.3d at 1039.

■■ Preemption may be implied where federal and state law conflict. Such a conflict exists when compliance with both federal and state law is a physical impossibility, or where state law obstructs "accomplishment and execution of the full purposes and objectives of Congress." *Pacific Gas,* 461 U.S. at 204, 103 S.Ct. at 1722. In addition, preemption may be implied where "a scheme of federal legislation is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'" *First Gibraltar,* 19 F.3d at 1039 (quoting *Pacific Gas,* 461 U.S. at 204, 103 S.Ct. at 1722).

■ To determine whether Texas homestead law is preempted in the present case, the court must consider the intent of Congress manifested in the language of the Bankruptcy Code, as well as the police power of the State of Texas with respect to homestead protections.

Section 522(c)(1) of the Bankruptcy Code provides:

> Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case except—a debt of a kind specified in section 523(a)(1) or 523(a)(5) of this title[.]

The exempt property that may be held liable pursuant to § 522(c)(1) includes Cullen's Homestead. The question presented is whether Texas homestead law interferes with the pervasive scheme in bankruptcy established by Congress, or conflicts with the terms of § 522(c)(1).

 Texas laws protecting the homestead are expansive and deeply rooted. *Cf. Zwernemann v. Von Rosenburg,* 76 Tex. 522, 13 S.W. 485, 487 (1890). Homestead rights have long been zealously guarded, and they trace back to Texas' days as a republic, prior to admission into the Union. *See* Act of Jan. 26, 1839, 1839 Laws of Rep. of Tex. 1236. They "are not only based upon a tender regard for the welfare of the citizen, but have for their object the stability and welfare of the state." *Andrews v. Security Nat'l Bank,* 121 Tex. 409, 50 S.W.2d 253, 256 (1932). "The homestead exemption was founded on principles of soundest policy.... Its design was not only to protect citizens and their families from destitution, but also cherish and support in bosoms of individuals, those feelings of sublime independence which are so essential to maintenance of free institutions." *Franklin v. Coffee,* 18 Tex. 413, 417 (1857). Article XVI, § 50 of the Texas Constitution provides that no homestead can be the subject of a forced sale for payment of any debts other than purchase money debts, taxes, and mechanics liens. Tex. Const.Ann. art. XVI, § 50 (West 1993). The universal rule of construction is that the Texas homestead law is to be liberally construed to accomplish its objectives. *See In re Henderson,* 168 B.R. 151, 157 (W.D.Tex. 1993), *aff'd,* 18 F.3d 1305 (5th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 115 S.Ct. 573, 130 L.Ed.2d 490 (1994). Homestead protections will not be lightly disturbed. *See In re Moody,* 77 B.R. 566, 578 (S.D.Tex.1987), *aff'd,* 862 F.2d 1194 (5th Cir. 1989), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1562, 118 L.Ed.2d 209 (1992).

### B

 The court first considers whether § 522(c)(1) preempts the Texas homestead law pursuant to a pervasive scheme.

It is clear that under Texas law, Sandra would not be able to force the sale of Cullen's Homestead to collect sums owed pursuant to the Agreement and Divorce Judgment. *Eggemeyer v. Eggemeyer,* 623 S.W.2d 462, 466 (Tex.App.1981, writ dism'd w.o.j.) (holding homestead not subject to forced sale to secure payment of accrued child support because child support judgment does not fall within three categories of debt collectible from homestead specified in Texas Constitution). Sandra asks this court to hold that, in exchange for the protections of bankruptcy, a Texas debtor exposes to liquidation a homestead that, under any other set of circumstances, would be immune from execution.

The Bankruptcy Code does not support this result. Congress presumably understood, when it provided debtors with the option to elect state exemptions, that the broad protections of state law would apply. By allowing state exemptions under § 522(b), Congress contemplated that the exemptions available to debtors in the several states would not be uniform. There is therefore no "pervasive scheme" in the Bankruptcy Code with respect to exempt property. Sandra contends that "in the absence of a clear statement of intent to the contrary, Congress should be presumed to have intended the bankruptcy laws to apply uniformly across the states." Given the express relinquishment of uniformity in § 522(b), and the presumption against preemption when there is no clear and manifest congressional purpose, the court cannot agree.

Sandra is correct that § 522(c) covers all types of exempt property, whether claimed under the federal or state exemptions. As the court points out *infra* at § II(C), however, § 522(c) does not conflict with Texas law. The Turnover Statute's protection of exempt property does not therefore impose upon the exemption scheme set out in § 522. To the contrary, § 522 expressly provides that state-law exemptions apply under the Code.

 In addition, the history of § 522 supports the proposition that preemption may not be inferred. When Congress revised the Code to permit states to opt out of the federal exemptions, it delegated to the states precisely the authority Sandra contends is preempted—the power to designate which assets will be excluded from the bankruptcy estate. Originally, Congress contemplated providing a uniform and exclusive exemption provision to be applied to all bankruptcy cases, but rejected this proposal in favor of the regimen now in place. *See Report of the Comm'n on the Bankruptcy*

*Laws of the United States,* H.R.Doc. No. 93–137, 93rd Cong., 1st Sess., pts. I & II, at 4–503 (1973). In doing so, Congress allowed the states to prescribe the nature and extent of exemptions that might be used in bankruptcy—a significant delegation of authority.[3] *See Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991) ("Nothing in subsection (b) (or elsewhere in the Code) limits a State's power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemptions at all."). Because Congress has delegated this authority, this court must give deference to state law, and find that preemption applies only when there is a clear and specific conflict between Code provisions and state exemption laws. *See In re Stone,* 119 B.R. 222, 233 (Bankr.E.D.Wash.1990) (holding that even in exemption area, states cannot enact legislation in conflict with specific provisions of Bankruptcy Code).

### C

 The court next addresses whether Texas homestead law and § 522(c)(1) are in actual conflict.

Section 522(c)(1) provides that exempt property cannot be liable for most prepetition debts. It also specifies certain debts for which exempt property can be liable. It is silent, however, regarding how a creditor might execute a judgment on exempt property that can be held liable. The holder of a judgment for family support obligations can collect from exempt property if the creditor has a means of execution. For execution on the Judgment, Sandra must rely on state law—in this case the Texas Turnover Statute—which applies through Rule 69.

 The court rejects the assertion that Texas homestead law conflicts with this reading of § 522(c)(1) because Sandra still cannot collect from Cullen's Homestead. Sandra can impose liability on the Homestead, regardless of its exempt status. Under Texas law, a creditor may record and index an abstract of judgment in the county where property is located in order to perfect a judgment lien against the property. *See* Tex.Prop.Code Ann. § 52.001 (West 1995). This lien will attach even on homestead property. *Henderson,* 18 F.3d at 1309. In *Henderson* the court held, contrary to several Texas cases, that "a judicial lien in Texas does fasten a liability on the homestead" for purposes of determining whether a debtor can rely on § 522(f) of the Code to avoid it. *Id.* at 1309. "The debtor's homestead is not exempt from the perfected lien; rather, the homestead is exempt from any seizure attempting *to enforce* the perfected lien." *Exocet Inc. v. Cordes,* 815 S.W.2d 350, 352 (Tex.App.1991, no writ). Therefore under Texas property law, a homestead remains liable for debts of the type specified in §§ 523(a)(1) and 523(a)(5) of the Code because liens may be perfected against the property.

 This is all that § 522(c)(1) requires. The function of § 522(c)(1) is to ensure that certain liens on exempt property remain in force. It therefore serves to modify § 522(f)(1) of the Code, which provides:

> Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—a judicial lien[.]

In the absence of § 522(c)(1), a debtor could invoke the protections of § 522(f) to avoid the fixing of a lien on his exempt property for family support obligations. This is so because a debtor electing state exemptions is entitled to invoke the lien avoidance protections of § 522(f) even where state law defines exempt property in a manner that it is not encumbered by preexisting liens. *See Owen,* 500 U.S. at 313, 111 S.Ct. at 1838. Courts applying *Owen* have concluded that state law governs what property will be exempt, but that the effect of liens on that state-defined exempt property is a matter of federal law.

---

**3.** The debtor may opt to exempt property either under the exemptions provided in § 522(d), or under the exemptions provided by state and non-bankruptcy law. The debtor selects either of these options in its entirety, and cannot pick and choose items from both of the lists. *In re Stone,* 119 B.R. 222, 230 (Bankr.E.D.Wash.1990).

*Cf. In re Conyers,* 129 B.R. 470, 472 (Bankr. E.D.Ky.1991).

██ Sandra relies on several cases that actually support this court's reading of § 522(c)(1). In *In re Citrone,* 159 B.R. 144 (Bankr.S.D.N.Y.1993), the court held that a debtor's ability to avoid judicial liens that impair state exemptions does not extend to debts specified in § 522(c). The debtor could not therefore use § 522(f) to avoid two judgment liens for child and spousal support. *Id.* at 146 (holding debts of type specified in § 522(c)(1) "are not dischargeable under 11 U.S.C. § 523(a)(5) and thus may not be avoided under 11 U.S.C. § 522(f)"). By stating that exempt property remains liable for § 523(a)(1) and § 523(a)(5) debts, § 522(c)(1) serves to limit the scope of § 522(f)—not the scope of state exemptions.

██ Similarly, *Conyers* held that, even though the Kentucky homestead exemption did not apply to debts or liabilities existing prior to purchase of the property, § 522(f) would allow the debtor to avoid such liens because, absent the liens, the homestead would be exempt under state law. In reaching this conclusion, the court looked to § 522(c)(1) and determined that "the types of debts that remain collectible after bankruptcy from exempt property is controlled by federal rather than state law." *Conyers,* 129 B.R. at 472. The court's holding stands only for the proposition that state exemption law should not affect otherwise valid liens; the perfection of liens is governed by federal law as embodied in § 522.

██ Sandra asserts that "Section 522(c)(1) not only prevents general creditors from reaching the debtor's exempt property to satisfy their claims (whether the debtor asserts federal or state exemptions), but also allows two special types of claims to be satisfied out of property that would otherwise be exempt." This argument extends the reach of this section too far. The holdings in *Citrone* and *Conyers* do not make § 522(c)(1) an execution statute. When the *Conyers* court stated that §§ 522(c)(1), 523, and 524 would conflict with a reading of § 522(b) that empowers states to "permit or deny collection of certain claims from exempt property after bankruptcy *whether or not such claims are*

*dischargeable in bankruptcy," Conyers,* 129 B.R. at 472 (emphasis added), it was concerned about state exemption law altering the federal characterization of debts as collectible from either estate assets or assets outside of the bankruptcy estate (both exempt property and post-bankruptcy earnings). State exemption law must conform to the federal determinations of which debts survive bankruptcy. The mechanism by which those debts are collected, however, remains a matter of state law.

That § 522(c)(1) is not an exemption statute becomes clear when § 522(c) is read as a whole. *See United Savs. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988) (noting that statutory construction is holistic endeavor). Section 522(c)(2) allows exempt property to be held liable for certain debts already secured by a lien. If § 522(c) were an execution statute, it would have no cause to rely on existing liens to have effect. That liability as to § 523(a)(1) and § 523(a)(5) debts is not defined by pre-existing liens does not change the defining—as opposed to executory—nature of § 522(c). Rather, it suggests that for these debts a lien or other means of executing on the judgment need not precede the claiming of exemptions. The creditor, after the debtor has declared bankruptcy and claimed exemptions pursuant to § 522(b), may still pursue these debts by whatever means are available, *i.e.,* state-law remedies for execution on a judgment.

██ The remaining cases that Sandra cites involve attempts by debtors to avoid liens on their exempt property. In each case, nonbankruptcy law provided the creditor with a means to execute on the judgment. None of the cases suggests that § 522(c)(1) provides the mechanism for doing so. Rather, § 522(c)(1) prevents debtors from avoiding already-obtained liens for alimony, child support, and tax claims. *See, e.g., In re Meadows,* 75 B.R. 695, 698–99 (Bankr. N.D.Tex.1987) (denying debtor's claim of exemption for workers' compensation settlement where divorce agreement provided that half of settlement proceeds would go to minor daughter, and Tex.Fam.Code Ann.

§ 14.05 (West 1986) permitted Texas courts to provide for child's support from any resources available).

Texas homestead law does not bar the perfecting of a lien on homestead property. Accordingly, it does not conflict with the mandate of § 522(c)(1), which imposes a limitation on the lien-avoidance provisions of § 522(f).

\* \* \*

Section 522(c)(1) does not preempt Texas homestead law. Accordingly, Sandra's ability to collect the Judgment is determined according to the terms of the Texas Turnover Statute. Because this statute prohibits recovery from exempt property, and Cullen's Homestead is exempt under Texas law, Sandra may not invoke the Turnover Statute to force conveyance of the Homestead. The bankruptcy court's order denying Sandra's motion for a turnover is therefore

AFFIRMED.