Revised April 6, 1999

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 95-11112

_____

In the Matter of:

THOMAS CULLEN DAVIS;
KAREN JOYCE DAVIS,

Debtors,

_____

SANDRA DAVIS,

Appellant,

v.

THOMAS CULLEN DAVIS,

Appellee.
_____

Appeals from the United States District Court
for the Northern District of Texas
_____

March 17, 1999

Before KING, Chief Judge, POLITZ, JOLLY, HIGGINBOTHAM, DAVIS,
JONES, SMITH, DUHÉ, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS,
BENAVIDES, STEWART, PARKER, and DENNIS, Circuit Judges.

EDITH H. JONES, Circuit Judge:

In 1987, Cullen and Karen Davis filed for bankruptcy
relief and claimed as their exempt Texas homestead a residence
valued at $500,000 which they owned free and clear. Cullen's
former wife Sandra obtained a judgment from the bankruptcy court
declaring that her $250,000-plus claim for alimony, child support,
and maintenance was nondischargeable under 11 U.S.C. § 523(a)(5).

To enforce the nondischargeability judgment, Sandra sought turnover relief in the form of an order permitting her to foreclose on Cullen's and Karen's homestead. The bankruptcy court and the district court held that she could not levy on the debtors' homestead because it is protected from execution under Texas law, and 11 U.S.C. § 522(c)(1), a provision of the Bankruptcy Code, did not preempt the debtors' state-law rights. A split panel of this court reversed the lower courts. See Davis v. Davis (In re Davis), 105 F.3d 1017 (5th Cir. 1997). This case was selected for en banc rehearing because of its importance to federal bankruptcy law and to state exemption rules. We conclude that the lower courts were essentially correct and affirm their judgments denying Sandra the relief she seeks.

### FACTUAL AND PROCEDURAL HISTORY

When Sandra and Cullen divorced in 1968, they executed a property settlement, support and child custody agreement, and divorce judgment (collectively "divorce judgment"), and Cullen agreed to make monthly payments to Sandra through January 1, 1991, with certain contingent payments thereafter. In 1979, Cullen married Karen Davis. In 1984, Cullen and Karen purchased a house and lot for $750,000.

In 1987, Cullen and Karen stopped making payments to Sandra as required by the divorce judgment and filed for Chapter 7 bankruptcy relief, followed later by conversion to Chapter 11. As

2

has been noted, Cullen's and Karen's costly, lien-free home was claimed as exempt property pursuant to § 522(b)(2)(A) and valued at $500,000 on their schedules.

Armed with the bankruptcy court's judgment that Cullen owed her $300,000 in nondischargeable alimony, maintenance and child support obligations and associated attorneys' fees, Sandra requested that the bankruptcy court seize and sell the debtors' homestead under Texas Civ. Prac. & Rem. Code § 31.002(a), applicable to the action under Bankr. R. 7069 and Fed. R. Civ. P. 69. Because a debtor's homestead is exempt from attachment, execution, or seizure under Tex. Const. art. XVI § 50 and Texas Property Code § 41.002(a), the bankruptcy court determined that the debtors' homestead was not subject to the Texas turnover statute. In so doing, the court rejected Sandra's argument that § 522(c)(1) of the Bankruptcy Code preempted the Texas homestead exemption for nondischargeable debts related to family support as defined in § 523(a)(5). Sandra appealed this ruling to the district court, which affirmed for substantially the same reasons. Sandra timely appealed to this court. We review the lower courts' interpretation of the Bankruptcy Code <u>de</u> <u>novo</u>. <u>See</u> <u>Henderson v. Belknap (In re Henderson)</u>, 18 F.3d 1305, 1307 (5th Cir. 1994).

## THE BANKRUPTCY EXEMPTION STATUTE

At issue in this case are the meaning and preemptive force, if any, of 11 U.S.C. § 522(c), a provision that is part of

the Bankruptcy Code's framework for the treatment of exempt property. Understanding § 522(c) begins with a description of the lengthy provision governing exemptions of which it is a part. See United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Inc., 484 U.S. 365, 371, 108 S. Ct. 626, 630 (1988) ("Statutory construction, however, is a holistic endeavor.").

Federal bankruptcy law affords debtors a fresh start by enjoining collection of discharged debts, § 524, and by permitting the debtors to retain certain limited amounts and types of exempt property, § 522. Exemptions have been perennially controversial, because they reduce assets potentially available to pay creditors and arouse charges of abuse of bankruptcy. Exemptions are also fought over by states'-rights advocates, who value the traditional state legislative prerogative to adjust exemptions to local economic conditions, and by advocates of federal uniformity, who want to raise -- or lower -- exemptions based on conceptions of national equity. Congress allayed the controversy between state and federal advocates by providing in the 1978 Bankruptcy Code that states could opt out of prescribed federal exemptions altogether or could allow their citizens to select either schedule. See 11 U.S.C. § 522(b).

Exemptions are easy to claim. The debtor files a list of exempt property protected by applicable federal or state law with the court. See 11 U.S.C. § 522(l). If the exemptions are not

4

objected to, the property becomes exempt and unavailable to be levied on by pre-petition creditors or managed by the trustee.

The right to claim exemptions is closely guarded. Waivers are unenforceable. See 11 U.S.C. § 522(e). A debtor may claim exemptions even on property recovered by the trustee from third parties. See 11 U.S.C. § 522(g). The debtor may "avoid the fixing of a lien" to the extent it impairs an exemption. 11 U.S.C. § 522(f). Both husband and wife may claim exemptions individually. See 11 U.S.C. § 522(m).

The consequences of claiming exemptions are delineated in § 522(c). Generally, unless a case is dismissed, exempt property may not be held liable to repay any pre-petition debt of the debtor. This very broad protection requires qualification, at least to the extent that otherwise enforceable liens on exempt property must remain viable, § 522(c)(2)(A), as must properly filed tax liens, § 522(c)(2)(B). Only three other types of pre-petition claims against the debtor have any viability against property after it is declared exempt: certain nondischargeable tax claims, nondischargeable family support claims, and claims of federal depository institutions regulatory agencies.[1]

Moving from the general discussion of exemptions to the case before this court, the narrow terms of exception from the

_____

[1]Further, if a debtor claims an exemption on property recovered from a third party by the trustee, the exempt property may be used to pay the costs of administration. See 11 U.S.C. § 522(k).

5

protected status of exempt property are described by the statute as

follows:

> (c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except --
> (1) a debt of a kind specified in section 523(a)(1) or 523(a)(5) of this title;
> (2) a debt secured by a lien that is --
> (A)(i) [& ii] [not avoided or void under specified provisions of this title]; or
> (B) a tax lien, notice of which is properly filed; or
> (3) a debt of a kind specified in section 523(a)(4) or 523(a)(6) of this title owed by an institution affiliated party of an insured depository institution to a Federal depository institutions regulatory agency acting in its capacity as conservator, receiver, or liquidating agent for such institution.

11 U.S.C. § 522(c).

In order to prevail in this case, Sandra must demonstrate

that § 522(c) creates a basis for execution on Cullen's homestead

to enforce her nondischargeable divorce judgment and that, in

enacting this provision, Congress expressly or impliedly preempted

the Texas homestead law.[2]

---

[2]We have been unable to locate any appellate cases in which a court has directly discussed the effect of § 522(c) on state-created exemptions. Some courts have construed § 522(c) in conjunction with § 522(f) in the course of avoiding certain liens on exempt property. See, e.g., Patriot Portfolio, LLC v. Weinstein (In re Weinstein), 164 F.3d 677, 679-80 (1st Cir. 1999) (Reavley, J.). However, no court has held that § 522(c) establishes a separate means of enforcing liens against exempt property. Indeed, in cases involving the viability of nondischargeable federal tax liens, bankruptcy courts have cited the preemptive effect of the

Sandra's argument as to § 522(c) is simple. She reads the section to say that property exempt from payment of discharged debts is "liable" for the types of debts listed as exceptions. But the statute does not say this. Rather, it states that exempt property "is not liable . . . for any debt . . . except . . . [a nondischargeable divorce judgment]." Her argument did not persuade the bankruptcy court, who wrote:

> [Section 522(c)] does not create or establish liability. It enjoins most liability imposed by non-bankruptcy law upon exempt property but does not enjoin all liability for all debts. While it does not impose an injunction against liability on exempt property for § 523(a)(1) or (a)(5) debts, it also does not prevent non-bankruptcy law from imposing such an injunction. Indeed, Texas has done so.

Davis v. Davis (In re Davis), 170 B.R. 892, 898 (Bankr. N.D. Tex. 1994). At best, the statutory language is ambiguous from the standpoint of imposing the liability Sandra seeks. Viewed in light of the exemption framework outlined above, however, Judge Felsenthal's explanation is more plausible than Sandra's. In other words, § 522(c) sought to leave exempt property exposed to post-bankruptcy liability only to the extent it would have been exposed if the bankruptcy had not occurred. This interpretation is the most plausible reading of § 522(c) for several reasons.

_____

federal tax lien enforcement provision -- not Bankr. R. 7069 -- as a means of levying on otherwise exempt property. See, e.g., In re Reed, 127 B.R. 244, 247-48 (Bankr. D. Haw. 1991) ("[F]ederal law governs what is exempt from federal levy."); Crow v. Long, 107 B.R. 184, 186-87 (E.D. Mo. 1989). Thus, these cases do not control, or otherwise affect, our analysis of § 522(c).

Unless Congress expressly legislates otherwise, see infra, the policies of bankruptcy law have little bearing on property after it is exempt from the debtor's estate. Such property is no longer available for distribution to creditors, and it is not subject to charge for bankruptcy administrative fees. The debtor may use the exempt property without claims of pre-petition creditors hanging over his head. Of course, Congress deemed necessary some narrow exceptions to this policy of a fresh start for the debtor's exempt property. Thus, purchase money liens on exempt property had to be protected to insure a free flow of credit for purchases of property in markets like residential real estate. Further, tax liens were preserved against exempt property because the contrary result -- voiding, e.g., school tax liens on a homestead -- is unthinkable. Section 522(c)(2) deals with these claims by simply leaving them unaltered on exempt property. The section does not "create" or "impose" liability, nor does it override or add to state law or federal tax law. The holders of those sorts of unaltered claims would have to proceed via applicable non-bankruptcy collection schemes to realize on their security against exempt property.[3]

_____

[3]The district court drew this distinction as well:

> Section 522(c)(2) allows exempt property to be held liable for certain debts already secured by a lien. If §522(c) were an execution statute, it would have no cause to rely on existing liens to have effect. That liability as to § 523(a)(1) and § 523(a)(5) debts is not

8

Yet the same introductory language to § 522(c) that leaves these liens and underlying state and federal law collection schemes unaltered is argued to have a different meaning with respect to Sandra's nondischargeable divorce judgment. When Sandra contends that the language "creates" a "liability" over and above the protection her lien is accorded in state law, she means that the bankruptcy court can order execution on the homestead to satisfy the divorce judgment. This contention flatly contradicts standard canons of statutory interpretation, for the same language in a single statutory provision cannot have two different meanings. See Sullivan v. Stroop, 496 U.S. 478, 484, 110 S. Ct. 2499, 2504 (1990) (espousing "normal rule of statutory construction" that "identical words used in different parts of the same act are intended to have the same meaning").

Sandra's position is also hard to justify if applied to nondischargeable tax debts, the other non-lien debts specified in

---

defined by pre-existing liens does not change the defining -- as opposed to executory -- nature of § 522(c). Rather, it suggests that for these debts a lien or other means of executing on the judgment need not precede the claiming of exemptions. The creditor, after the debtor has declared bankruptcy and claimed exemptions pursuant to § 522(b), may still pursue these debts by whatever means are available, i.e., state-law remedies for execution on a judgment.

Davis v. Davis (In re Davis), 188 B.R. 544, 551 (N.D. Tex. 1995).

9

§ 522(c)(1).[4] That is, while a sense of compassion for ex-spouses and children, who are the obligees of nondischargeable family support obligations, provides impetus for "creation" of liability against exempt property, the balance is not so easily struck in favor of "creating" liability of exempt property to pay nondischargeable, non-liened tax debts. Congress might have made the choice to "create" liability of exempt property for both types of nondischargeable debt, but this is unlikely. Taxing authorities benefit from favorable lien laws and other extraordinary enforcement sanctions and penalties, and these prerequisites render additional protections in § 522(c) superfluous. Linguistically, Sandra's argument must furnish the same protection to nondischargeable non-liened tax obligations as she asserts it does for nondischargeable family support obligations. But the mandated linguistic parallelism exposes an illogical result.

Notwithstanding our view that Sandra's construction of § 522(c) creates internal inconsistencies in that provision, bits of legislative history and the import of § 522(f) may be cited to bolster her position. These arguments are not without force, but they are ultimately unconvincing.

In 1990, Congress amended § 522(c)(3), creating an exception designed to prevent "bank insider kingpins" from hiding

---

[4]Many tax debts are rendered nondischargeable by § 523(a)(1), a provision which is designated an exception to § 522(c) in the same clause with the reference to family support obligations. See 11 U.S.C. § 522(c)(1).

10

behind state exemptions to retain their "ill gotten gains." 136 Cong. Rec. E3686 (daily ed. Nov. 2, 1990) (statement of Rep. Schumer); see also 11 U.S.C. § 522(c)(3). A statement of Senator Biden during Senate consideration of the provision suggests that the proposed legislative language

> specifically pre-empts State homestead laws, which would otherwise allow S&L crooks to retain lavish homes through the excessive protections in some State bankruptcy laws.

136 Cong. Rec. S17,602 (daily ed. Oct. 27, 1990). Isolated statements of individual legislators represent neither the intent of the legislature as a whole nor definitive interpretations of the language enacted by Congress. See Board of Educ. v. Rowley, 458 U.S. 176, 204 n.26, 102 S. Ct. 3034, 3049 n.26 (1982). Further, these particular statements post-date by twelve years the enactment of the prefatory language in § 522(c) with which we are here concerned. For that additional reason, they are not probative. See United States v. Price, 361 U.S. 304, 313, 80 S. Ct. 326, 332 (1960) ("[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.").

Sandra also contends that § 522(c)(1) is not intended to serve simply as a lien preservation provision, because that purpose is fulfilled by § 522(f), which provides in part that while a debtor may avoid the fixing of a lien on exempt property, the debtor may not avoid a judicial lien for alimony or family support. If § 522(c)(1) does not have the broader purpose of permitting

11

execution against exempt property, then it is allegedly redundant of the lien preservation function of § 522(f)(1)(A)(i). But § 522(c) is not duplicative of § 522(f)(1)(A). The former provision states the effect of an exemption on liability for each kind of debt specified, while the latter provision states when a party may avoid the fixing of a pre-petition lien on exempt property. The two sections overlap in part, but their scope and purpose differ.

Nor does the Supreme Court's interpretation of § 522(f) shed light on the relation between that provision and § 522(c), at least not in any sense helpful to Sandra. In <u>Owen v. Owen</u>, the Supreme Court discussed whether under § 522(f) a state homestead exemption (with its state law limitation) should be treated differently from the federal exemption insofar as the § 522(f) federal lien avoidance provision is concerned. <u>See</u> 500 U.S. 305, 313, 111 S. Ct. 1833, 1838 (1991). The Court concluded that "[n]othing in the text of § 522(f) remotely justifies treating the two categories of exemptions differently." <u>Id.</u> In this case, the provision in § 522(c)(1) for continuing liability for certain debts applies equally to both federal and state exemption schemes; in each scenario, liability persists after bankruptcy to the same extent it did before. It is only with respect to the enforcement of such liability, a matter which Congress has left to state mechanisms, that the results differ.

12

A holistic reading of § 522(c)(1) undermines Sandra's theory that the provision is literally self-executing. She has confused her right with her remedy. This error is exposed by applying her reasoning to other debts that § 522(c) preserves notwithstanding property exemptions, i.e. certain tax debts, federal depository regulators' debts, and debts already secured by a valid lien. If Sandra's reading of § 522(c) is correct, then a homestead could be sold to repay non-liened tax debt, made nondischargeable according to § 523(a)(1), or indeed to pay off an obligation owed to the FDIC without recourse to federal or state lien or homestead protection laws. The impact of such a construction would put the preferred creditors in a better position after the debtor has filed bankruptcy than before and may create an incentive for filing involuntary bankruptcies. In effect, Sandra's proffered construction of § 522(c) does not merely withhold any special protection offered by bankruptcy law, but overrides non-bankruptcy law and has the effect of denying the debtor even exemptions that would have been available outside of bankruptcy. Further, this interpretation seriously disadvantages a debtor subject to the listed obligations, and it actively discourages a large number of potential debtors who are faced with the types of obligations excepted from § 522(c) from seeking bankruptcy relief.

13

Congress surely would not have reached this consequential result without legislating more explicitly.[5]

For all these reasons, we conclude that § 522(c)(1) does not "create" "liability" of exempt property for specified debts following bankruptcy.  Instead, the section permits creditors holding such claims to proceed against the property after bankruptcy based on the rights and remedies they would have had under state law if bankruptcy had not been filed.

### PREEMPTION

To prevail in her approach to § 522(c), Sandra must show that it preempts Texas law, thus subjecting Cullen's homestead to seizure and sale to satisfy her nondischargeable divorce judgment, despite the express prohibition on such foreclosure contained in the Texas constitution and statutes.  See Eggemeyer v. Eggemeyer, 623 S.W.2d 462, 466 (Tex. App.-Waco 1981, writ dism'd) (homestead

---

[5]The bankruptcy court pointed out how easily an amendment of § 522(c)(1) could have expressed the affirmative mechanism for the collection of family support obligations that Sandra advocates:

> (c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under § 502 of this title as if such debt had arisen, before the commencement of the case. (1) Notwithstanding this or any other federal or state injunction of liability for exempt property, exempt property shall be liable for debts of a kind specified in § 523(a)(5) of this title.

Davis, 170 B.R. at 897 (emphasis added).

14

not subject to foreclosure to secure payment of accrued child support).

The Supremacy Clause enables Congress to override state laws if it so intends. Deference to our federalism counsels a presumption that areas of law traditionally reserved to the states, like police powers or property law, are not to be disturbed absent the "clear and manifest purpose of Congress."[6] But preemption may be implied if state and federal laws conflict or a state law thwarts the "accomplishment and execution" of congressional intent. See Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n, 461 U.S. 190, 204, 103 S. Ct. 1713, 1722 (1983). Moreover, if Congress has passed a pervasive federal legislative scheme leaving states no room to supplement, then state law will also be preempted. See First Gibraltar, 19 F.3d at 1039 (citing Pacific Gas, 461 U.S. at 204, 103 S. Ct. at 1722). Sandra has attempted to demonstrate (1) express preemption; (2) that §§ 523(a)(5) and 522(c) of the Bankruptcy Code create so pervasive a set of regulations as to impliedly preempt state laws regarding exempt property, and (3) that § 522(c) conflicts irreconcilably with the Texas homestead exemption. Express preemption is precluded by our rejection of Sandra's proffered interpretation of § 522(c).

---

[6]See Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S. Ct. 1146, 1152 (1947); First Gibraltar Bank, FSB v. Morales, 19 F.3d 1032, 1039 (5th Cir. 1994) (citing California v. ARC Am. Corp., 490 U.S. 93, 101, 109 S. Ct. 1661, 1665 (1989)).

15

The Bankruptcy Code's "policy" of strengthening enforcement of family support obligations is a weak reed on which to support implied preemption.  Although § 522(c) entitles these obligations to special status against property otherwise exempt in bankruptcy, neither that provision nor § 523(a)(5), the provision for nondischargeability of family support obligations, which § 522(c) incorporates, expresses the full intent of the Code.  A debtor who owes family support obligations is afforded a great deal of latitude and protection.  First, the filing of the bankruptcy case automatically stays payments of support obligations, as it does all other payments to pre-petition creditors.  See 11 U.S.C. § 362(a).  An ex-spouse deprived of certain family support payments must file an adversary proceeding in bankruptcy court to enforce nondischargeability, and even then, the court may order reduction of certain payments if it finds that the defaulting spouse would suffer "hardship."  See 11 U.S.C. §§ 523(c), 523(a)(15).  A debtor may obtain a Chapter 7 discharge or confirm a Chapter 13 plan without being current in family support obligations.  Bankruptcy law presently contains neither a pervasive or consistent approach toward family support obligations.

Reliance on the exemption provision of the Code as a source of implied preemption is also misplaced.  Congress specifically preserved state exemptions under § 522(b), rejecting

a proposal for uniform federal exemptions.[7]  Congress allowed states to define the existence and limits of exemptions.[8]  By expressly preserving a role for the state law in the Bankruptcy Code, it is clear that Congress has not devised a policy on federal exemptions so pervasive as to leave no room for a state to supplement bankruptcy law with respect to exemptions.

Even more important, there is no direct conflict between compliance with the Bankruptcy Code and the Texas homestead law. We concluded earlier that in specifying certain debts for which the exempt property is still liable, § 522(c) leaves the parties to their state law collection rights.  To execute a judgment against Texas property, a judgment creditor must rely on the state mechanism for enforcement.  Although Texas law does not permit the seizure of a homestead for a family support obligation, Sandra can still perfect a judgment lien against the property in question, even if it is a homestead.  The property is thus liable, although it is immune from seizure while it is a homestead.[9] This is all

---

[7]See Report of the Comm'n on the Bankruptcy Laws of the United States, H.R. Doc. No. 93-137, 93rd Cong., 1st Sess., pts. I & II, at 4-503 (1973).

[8]See id. at 549-50.

[9]The Texas Supreme Court has observed that a lien is never valid (in the sense of being enforceable) unless it secures payment for certain debts provided for in Tex. Const. Art. XVI, § 50.  See Benchmark Bank v. Crowder, 919 S.W.2d 657, 660 (Tex. 1996).  This does not mean, however, that a lien that is not valid and enforceable is completely without effect.  As one Texas appellate court has remarked,

17

§ 522(c)(1) requires.  See Davis, 188 B.R. at 550.  Section 522(c)(1) assures that the debtor remains ultimately liable, and the property or proceeds from the sale of property may be subject to seizure if the property ever ceases to be the debtor's

---

[u]nder [Texas Property Code] statutory provisions, a judgment lien is "perfected," or brought into existence against a debtor's property, by recording and indexing an abstract of the judgment in the county where the property lies.  The debtor's homestead is not exempt from the perfected lien; rather, the homestead is exempt from any seizure attempting to enforce the perfected lien.

Exocet Inc. v. Cordes, 815 S.W.2d 350, 352 (Tex. App.-Austin 1991, no writ).

18

homestead.[10]  Because the Texas homestead law does not bar the attachment of a perfected lien to homestead property, it does not conflict with § 522(c)(1).

Section 522(c) also fails to conflict with Texas law because it is not self-executing, it provides no means for enforcing the creditor's right.  Fed. R. Civ. P. 69(a) explains why:

> Process to enforce a judgment for the payment of money shall be a writ of execution . . . . The procedure on execution, in proceedings on and in aid of a judgment, and in proceedings on and in aid of execution <u>shall be in accordance with the practice and procedure of the state in which the district court is held</u>, existing at the time the remedy is sought, <u>except that any statute of the United States governs to the extent that it is applicable</u>.

---

[10]As a principle of Texas law, "a judgment lien attaches to the judgment debtor's interest if he abandons the property as his homestead before he sells it."  <u>Hoffman v. Love</u>, 494 S.W.2d 591, 594 (Tex. Civ. App.-Dallas 1973, no writ).  For example, if the debtor acquires a second homestead before selling the first homestead, the first homestead is deemed abandoned and is no longer exempt from seizure.  <u>See</u> <u>England v. Federal Deposit Ins. Corp.</u>, 975 F.2d 1168, 1175 (5th Cir. 1992).  Furthermore, if the debtor retains the property as his homestead until he sells it, unless the debtor reinvests the proceeds of the sale in another homestead within six months from the date of sale, the proceeds are subject to seizure by creditors.  <u>See</u> <u>Sharman v. Schuble</u>, 846 S.W.2d 574, 576 (Tex. App.-Houston [14th Dist.] 1993, no writ); Tex. Prop. Code § 41.001(c).  Even during this six month window, if the debtor purchases a new homestead any remaining proceeds from the sale of the first homestead are instantly rendered non-exempt.  <u>See</u> <u>England</u>, 975 F.2d at 1174.

These principles allayed our concerns about possible mootness arising from Cullen Davis's sale of one homestead and timely purchase of another homestead while this case was pending.

19

(emphasis added).  Pursuant to Rule 69(a), incorporated by Bankr. R. 7069, Texas's enforcement mechanisms govern in bankruptcy court in the absence of a federal execution statute.  The Texas turnover statute does not permit seizure and sale of a homestead to satisfy a family support obligation.  <u>See</u> Tex. Civ. Prac. & Rem. Code § 31.002.

## CONCLUSION

Cullen and Karen Davis were entitled to exempt their homestead from claims of creditors under Texas and federal bankruptcy law, and they did so.  Sandra is entitled, under § 522(c)(1), to enforce her nondischargeable judgment for family support obligations notwithstanding the exemption claim, but her remedy must be in accord with Texas law, since § 522(c) is not an execution statute and does not preempt relevant Texas law.  Either Texas or, perhaps, the U.S. Congress could alter this situation, but it is our duty to enforce the present statute.

The judgment of the district court, affirming the judgment of the bankruptcy court, is **AFFIRMED.**

20

DENNIS, Circuit Judge, with whom POLITZ and PARKER, Circuit Judges, join, dissenting:

"Property that is properly exempted under § 522 [of the Bankruptcy Code] is (<u>with some exceptions</u>) immunized against liability for prebankruptcy debts. § 522(c)." *Owen v Owen*, 500 U.S. 305, 308 (1991) (emphasis added). The issue in this case is whether the bankruptcy court's judgment in favor of the debtor's former spouse against the debtor for unpaid alimony, maintenance, and child support debts falls within one of § 522(c)'s exceptions so that the debtor's otherwise exempted property is not immunized against liability, seizure and sale for their payment. Because the majority opinion decides this question in diametric contradiction to § 522(c)'s clear language, and in conflict with the decisions of the Supreme Court, other circuits, and numerous bankruptcy courts in this and other circuits that have followed the panel opinion in this case, I respectfully dissent.

## I. Background

Appellant Sandra Davis (Sandra) and her former husband, Thomas Cullen Davis (Mr. Davis), the debtor in bankruptcy, were divorced in 1968. Pursuant to their property settlement, support and child custody agreement, and divorce judgment, Mr. Davis agreed to make monthly payments to Sandra through January 1, 1991, and thereafter to pay her other sums subject to certain contingencies. Mr. Davis made all payments until he declared bankruptcy in 1987. In 1979, Mr. Davis married Karen Joyce Davis, also a debtor in this action. In 1984, Mr. Davis acquired property that he claimed as his homestead. The property was unencumbered and valued at $500,000.

Mr. Davis and Mrs. Karen Davis filed a voluntary Chapter 7 petition in 1987, which was converted to a Chapter 11 case. They elected to exempt from the estate property that was exempt under the state homestead exemption laws. In an adversary bankruptcy court proceeding, Mr. Davis sought a determination that his indebtedness pursuant to the property settlement agreement and

divorce judgment was dischargeable. Sandra counterclaimed, asserting that the indebtedness was nondischargeable under § 523(a)(5). In 1991, the parties compromised and acceded to a final consent judgment by the bankruptcy court declaring the debt to be for nondischargeable alimony, maintenance, and child support under § 523(a)(5) and awarding Sandra a principal sum of $250,000 plus $50,000 in attorney's fees. <u>Thus, the judgment Sandra seeks to enforce is not a "divorce judgment" as stated by the majority, but a judgment of the bankruptcy court based on Mr. Davis's debts for unpaid alimony, child support, and maintenance</u>.

Sandra moved in bankruptcy court for turnover relief ordering Mr. Davis to execute a warranty deed conveying the homestead to her to enforce the bankruptcy court judgment. After a hearing, the bankruptcy court concluded that Sandra could not levy upon Mr. Davis's exempted homestead property to collect her judgment for alimony, maintenance, and child support, holding that the Bankruptcy Code does not preempt the state constitutional homestead exemption law. *In re Davis*, 170 B.R. 892, 898 (Bankr. N.D. Tex. 1994). Sandra appealed. The district court affirmed. *In re Davis,* 188 B.R. 544 (N.D. Tex. 1995). Sandra appealed to this court.

A panel of this court vacated the district and bankruptcy court judgments and remanded for further proceedings, holding that alimony, maintenance, and child support debts fall within the exceptions provided for by § 522(c) to the immunity of exempted property against liability for prebankruptcy debts; that the state homestead exemption laws were superseded by the Bankruptcy Code; and that the debtor's property is liable to seizure and sale to pay the bankruptcy court's judgment against the debtor in favor of his former spouse based on his unpaid alimony, child support, and maintenance debts. *Davis v. Davis*, 105 F.3d 1017 (5th Cir. 1997).

## II. Discussion

22

Property that is properly exempted under § 522 is, as a general rule, immunized by § 522(c) against liability for prebankruptcy debts. *Owen,* 500 U.S. at 308. Certain debts are excepted from the protection of § 522(c), however, for which exempted property is liable: (1) nondischargeable debts for alimony, maintenance, and child support, § 523(a)(5), and taxes, § 523(a)(1); (2) valid liens that may not be avoided under the trustee's powers and certain tax liens in exempt property that are not affected by the bankruptcy; and (3) nondischargeable debts for fraud and willful injury owed to a federal depository institutions regulatory agency acting as a conservator, receiver, or liquidating agent under §§ 523(a)(4) and (6). The debt at issue in the present case is a debt of a kind specified in § 523(a)(5), which makes nondischargeable any debt "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record. . . or property settlement agreement. . . ." 11 U.S.C. § 523(a)(5).

Property that is exempted under § 522 and therefore immune from all other liability is liable for and may be seized to pay nondischargeable alimony, maintenance, and child support debts and other obligations excepted from § 522(c) protection. *See Owen,* 500 U.S. at 308 ("Property that is properly exempted under § 522 is (with some exceptions) immunized against liability for prebankruptcy debts.") (emphasis added); *Walters v. United States Nat'l Bank of Johnstown*, 879 F.2d 95, 97 (3d. Cir. 1989) (Tax and alimony and child support debts "are neither dischargeable nor exemptible."); RESNICK, WEINTRAUB & RESNICK, BANKRUPTCY LAW MANUAL ¶ 4.08 at 4-54 (4th ed. 1996) ("Exempt property may be seized to pay nondischargeable tax liabilities and obligations to pay alimony, maintenance, or support."); 2 DAVID G. EPSTEIN ET AL., BANKRUPTCY, § 8-1 n.17 (1992) ("Exemptions are not effective, however, with respect

to two types of nondischargeable debts: tax debts and debts for alimony, maintenance, or child support."); DON CAMPBELL ET AL., CREDITORS' RIGHTS HANDBOOK, A GUIDE TO THE DEBTOR-CREDITOR RELATIONSHIP, § 20.03[4] (1993) ("Exempt property may be used to satisfy certain tax debts or for obligations for child support or alimony."); DAVID G. EPSTEIN & STEVE H. NICKLES, DEBT, BANKRUPTCY, ARTICLE 9 AND RELATED LAWS, 759 (1994) ("After bankruptcy, creditors with domestic claims excepted from discharge by section 523(a)(5) will have recourse to exempt property.").

This reading of § 522 is in accord with its legislative history. Referring to that section the Senate report, with which the House report is virtually identical, reads:

> Subsection (c) insulates exempt property from prepetition claims other than tax claims (whether or not dischargeable), and other than alimony, maintenance, or support claims that are excepted from discharge. The rule of *Long v. Bullard*, 117 U.S. 617 (1886), is accepted with respect to the enforcement of valid liens on nonexempt property as well as on exempt property.

S. REP. NO. 95-989, 95th Cong., 2d Sess. 76 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5862; *see* H.R. REP. NO. 95-595, 95th Cong., 2d Sess. 361 (1978), *reprinted in* 1978 U.S.C.C.A.N. 6317. The drafters of the exemption section thus were aware that exempt property would be protected against some, but not all, nondischargeable debts. *See Walters*, 879 F.2d at 97.

In the present case, the panel opinion's interpretation of § 522(c) is confirmed by the legislative history of § 522(c)(3), the third exception added by the Crime Control Act of 1990, Pub. L. No. 101-647, relating to the enforcement of certain nondischargeable debts owed to a federal depository institutions regulatory agency acting as a conservator, receiver, or liquidating agent. Referring to that new exception, the section-by-section analysis pursuant to

the remarks of Representative Charles Schumer on the Banking Law Enforcement section of the Crime Control Act of 1990 provides:

> Currently, section 522(c) provides that the property exemptions described elsewhere in section 522 do not apply in the case of tax obligations, alimony and child support responsibilities, or security agreements in which the otherwise exempt property is pledged as collateral. The new exception would apply to certain debts owed by institution-affiliated parties to federal depositary institutions regulatory agencies acting in their capacity as receiver, conservator, or liquidating agent. Specifically, the debts covered are debts for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, as described in section 523(a)(4); and for willful and malicious injury to another entity or to the property of another entity, as described in section 523(a)(6). These acts represent the highest form of financial criminality against a federally insured depositary institution by a person entrusted under the law with the care and safekeeping of the institution.

136 CONG. REC. E3687 (Nov. 2, 1990) (emphasis added). Also, Senator Biden, Chairman of the Senate Judiciary Committee, remarked:

> I accepted changes drafted by the House only because they maintained the core Senate-passed bankruptcy language that prevents all S&L wrongdoers from discharging their debts by filing for bankruptcy. The final language specifically preempts State homestead laws, which would otherwise allow S&L crooks to retain lavish homes through the excessive protections in some State bankruptcy laws.
>     Mr. President. . . [u]nder the bill, major S&L offenders will spend time behind bars. Their assets will be seized. And every possible dollar will be recovered for depositors and taxpayers.

136 CONG. REC. S17602 (Oct. 27, 1990) (emphasis added).

25

Bankruptcy courts consistently have interpreted the tax and tax lien provisions of §§ 522(c)(1) and (2), correlative to the alimony provision of § 522(c)(1), to authorize creditors and lienholders to reach the exempted property of the debtor to satisfy tax liabilities. *See, e.g., In re Holl*, 35 B.R. 206 (Bankr. D. Haw. 1983) (IRS was able to levy on exempted proceeds of sale of homestead to satisfy a debt for a tax nondischargeable under § 523(a)(1)); *In re Hebermehl*, 132 B.R. 651 (Bankr. D. Colo. 1991) (same as to exempted wages); *In re Braddock*, 149 B.R. 636 (Bankr. D. Mont. 1992) (tax lien took priority over homestead exemption as to exempt proceeds derived from sale of homestead). *Accord Davenport v. United States*, 136 B.R. 125 (W.D. Ky. 1991); *Crow v. Long*, 107 B.R. 184 (E.D. Mo. 1989). *See also In Re Reed*, 127 B.R. 244 (Bankr. D. Haw. 1991) (tax lien could be enforced against exempt pension plan contributions).

Section 522(c)(1) was not intended, as the majority asserts, merely to preserve judgments and judicial liens securing alimony, maintenance, and child support debts against exempted property. That purpose is effectuated by § 522(f)(1), which excepts from the debtor's right under § 522 to avoid the impairment of the fixing of liens on exempted property, *inter alia*, judicial liens securing alimony, maintenance, and child support debts. Nor was § 522(c)(1) intended merely to put alimony or child support judgment creditors on the same footing with other creditors holding nondischargeable claims. That result is expressly accomplished by § 523(a)(5). The context in which § 522(c)(1) occurs, the text of the Bankruptcy Code as a whole, including particularly §§ 522(b), (c) and (f) and § 523(a)(5), *in pari materia*, and the legislative history of those provisions, clearly show that § 522(c)(1) does not redundantly duplicate the lien preservation function of § 522(f)(1)(A)(i) or the exception to discharge function of § 523(a)(5). By § 522(c)(1), Congress clearly intended to insulate nondischargeable

alimony, child support, and maintenance debts from the effects of the debtor's exemptions.

The en banc majority erroneously concludes that the Bankruptcy Code does not preempt the state homestead exemption laws. They fail to recognize the scope of the federal preemption of the field of bankruptcy law or the exclusivity of the federal-law basis of the debtor's qualified right to exempt property from the bankruptcy estate. The power of Congress to establish uniform laws on the subject of bankruptcies throughout the United States is unrestricted and paramount. U.S. CONST. art. I, § 8, cl. 4; *International Shoe Co. v. Pinkus*, 278 U.S. 261, 265 (1929); *Pereira v. United Jersey Bank, N.A.*, 201 B.R. 644, 678 (S.D.N.Y. 1996). Congress exercised this power by enacting national, uniform bankruptcy laws, the most recent of which is the Bankruptcy Code, which necessarily exclude or displace any conflicting state regulation. *International Shoe*, 278 U.S. at 265. Consequently, states may not pass or enforce laws to interfere with or complement the Bankruptcy Code or to provide additional or auxiliary regulations. *See id.* at 266.

## A. Recent Decisions Following the *Davis v. Davis* Panel Opinion Analysis[11]

A number of recent circuit court, bankruptcy appellate court, and bankruptcy courts have agreed with some or all of the foregoing principles. Many of those courts have followed, quoted or cited the *Davis v. Davis* panel opinion in the present case with approval. *See Leicht v. Bruin Portfolio, LLC (In re Leicht)*, 222 B.R. 670, 677, 678, 679 n.9 (B.A.P. 1st Cir. 1998) ("[A]lthough through § 522(b) Congress provided states with the opportunity to define the category and content of exemptions resident debtors may invoke in

---

[11] The majority's failure to acknowledge and address all but one of these cases is difficult to understand.

27

bankruptcy . . ., it defined the operative effect of exemptions in bankruptcy through §§ 522(c) and (f). . . . Section 522(c) completes the Code's treatment of nondischargeable debts, complementing inter alia §§ 523(a), 524(a)(3) and 727(b), by providing that exempt property is immunized against liability for prebankruptcy debts, including 'some, but not all, nondischargeable debts'. . . . § 522(c) may not be a one-way street. It may operate to subject exempt property to liabilities for which it could not be reached under state law.") (quoting *Davis,* 105 F.3d at 1020, 1022-23); *In re Gregory,* 214 B.R. 570, 574 (Bankr. S.D. Tex. 1997) ("Section 522(c)(1) of the Bankruptcy Code provides that exempt property can be used to pay certain pre-petition debts such as those for taxes under § 523(a)(1) and for alimony and child support under § 523(a)(5). These debts are neither dischargeable nor exemptible. Because these provisions of the Bankruptcy Code preempt state homestead exemption law, 'the state homestead exemption law is inoperative' against claims pursuant to § 523(a)(1) and § 523(a)(5) and creditors with claims under these provisions are 'entitled under the Bankruptcy Code to proceed against the debtor's otherwise exempted property.'") (quoting *Davis,* 105 F.3d at 1020, 1023); *S & C Home Loans, Inc., v. Farr (In re Farr),* 224 B.R. 438, 439 (Bankr. N.D. Cal. 1998) ("A debtor's rights under section 522(c) are governed by federal law, not state law. The clear intent of Congress in section 522(c) was to preserve property exempted in bankruptcy for satisfaction of tax and support obligations.") (citing *Davis,* 105 F.3d at 1021-23); *In re Pascucci,* 225 B.R. 25, 28 (Bankr. D. Mass. 1998) ("'[F]ederal law determines whether property is exempted and immunized against seizure and sale for prebankruptcy debts.'") (quoting *Davis,* 105 F.3d at 1022); *In re Van Zant,* 210 B.R. 1011, 1015 (Bankr. S.D. Ill. 1997) "[W]hile state law identifies and quantifies the property a debtor may exempt from the bankruptcy estate in those states that have 'opted-out' of the federal exemptions, the Code does not adopt or preserve the state exemptions with all their built-in limitations.") (citing *Davis,* 105 F.3d at 1022-23); *In re Richardson,* 224 B.R. 804, 808 (Bankr. N.D. Okla. 1998) ("'The power of Congress to establish uniform laws on the subject of bankruptcies throughout the United States is unrestricted and paramount.

. . . Consequently, states may not pass or enforce laws to interfere with or complement the Bankruptcy Code or to provide auxiliary regulations.'") (quoting *Davis,* 105 F.3d at 1022). *See also Patriot Portfolio, LLC v. Weinstein (In re Weinstein),* 164 F.3d 677, 683 (1st Cir. 1999) (Reavley, J.) ("We recognize that Congress afforded significant deference to state law by allowing bankruptcy debtors to choose state exemptions and by further allowing states to opt out of the federal exemption scheme entirely. Yet, . . . the state's ability to define its exemptions is not absolute and must yield to conflicting policies in the Bankruptcy Code.") (citing *Owen,* 500 U.S. at 313).

## B. Response to Majority's Erroneous Reasoning

The majority's decision is based on two arguments: (1) that § 522(c) of the Bankruptcy Code is ambiguous as to whether the types of creditors' claims that §§ 522(c)(1)-(3) except from immunization of exempted property against liability may be enforced against exempted property after bankruptcy; and (2) that the most plausible interpretation of § 522(c) is that it "leave[s] exempt property exposed to post-bankruptcy liability only to the extent it would have been exposed if the bankruptcy had not occurred." Maj. Op. at 7-8. Both arguments are incorrect for the many reasons discussed below.

Perhaps the best short refutation of the majority's arguments is contained in Professor Resnick's explanation of how § 522(c) is designed to protect the debtor's exempted property from most, but not all, nondischarged creditors' claims:

> It is easy to see that if property that is exempt under the Code but not under state law is available to creditors with nondischargeable claims, the effect of the exemption may be wiped out.
>
> Congress was aware of this problem, and, for this reason, the Code provides that exempt property may not be levied upon for any prepetition debt, whether or not the debt is discharged. There are, however, several exceptions. Exempt property may be seized to pay nondischargeable tax liabilities and obligations to pay alimony, maintenance, or support. Moreover, valid liens that may not be avoided under the trustee's powers and certain tax liens in exempt property are not affected by the bankruptcy. A third exception was added in 1990 relating to the enforcement of certain nondischargeable debts owed to a federal depository

29

> institutions regulatory agency acting as a conservator, receiver, or liquidating agent.

RESNICK, *supra* ¶ 4.08[1], at 4-53 to 4-54 (footnotes omitted).

Thus, § 522(c) is designed to perform two essential functions. In general, it shields exempted property from liability to seizure and sale for the payment of nondischargeable debts. As exceptions to that general rule, it allows piercings of the shield and permits levies upon exempted property for the payment of a small number of certain types of nondischargeable debts. The exceptions are narrowly and carefully drawn to uniformly further several policies deemed by Congress to be of national importance.

The indiscriminate rendering of § 522(c) by the majority opinion erroneously obliterates the important distinction Congress drew between the small class of particular types of nondischargeable debts specified by §§ 522(c)(1)-(3) and all other nondischargeable debts listed in § 523(a). The majority wrongfully relegates needy former spouses with unpaid alimony and child support claims, and other claimants given legislated preference by §§ 522(1)-(3), to the ordinary nondischargeable creditor class, forces them to compete with all comers for basic sustenance from the scarce non-exempt assets of the debtor, and defeats the goals envisioned by Congress in its well thought out and deliberately crafted legislation.

The majority opinion does not follow the plain meaning of the Bankruptcy Code's words. Section 522(c) is not ambiguous, especially when it is read within the context of the Code as a whole. Contrary to the majority opinion, § 522(c)'s exception of specific debts named therein from the effects of the debtor's exemptions is not qualified according to whether the debt is accompanied by a lien. The majority's attempt to read such a qualification or distinction into § 522(c) is an unconcealed attempt to substitute its own policy making for that of Congress. When the words of § 522(c) are applied as written and within the context of the Code as a whole, they clearly and unambiguously conflict with and preempt the state homestead exemption laws with respect to the debtor's alimony, child support, and maintenance obligations. Section 105 of the Bankruptcy Code unquestionably authorizes a bankruptcy court to issue any order, process, or judgment

necessary to carry out the provisions of the Code, including an order to seize and sell the debtor's property to satisfy the bankruptcy court's judgment. Federal Rule of Civil Procedure 69(a) must be used by federal courts in accordance with other applicable statutes of the United States to enforce, not thwart, federal court judgments. The majority is clearly wrong in ignoring §105 of the Bankruptcy Code and in misapplying Federal Rule of Civil Procedure 69(a) to unpreempt and exalt the state homestead exemption laws over the Bankruptcy Code and to defeat the enforcement of the bankruptcy court's judgment.

### 1. The Meaning of "Exemption" and "Liability"

Section 522(c) is not "ambiguous" as the majority contends. The plain meaning of the term "exemption," as used in § 522 of the Bankruptcy Code, refutes the majority's argument that the term "liable," as used in that section, means that a debtor's property is only subject to a judgment lien, and remains immune from seizure and sale.

The Supreme Court has defined "exemption" as the "right . . . which withdraws the property from <u>levy and sale under judicial process</u>." *White v. Stump,* 266 U.S. 310, 313 (1924) (emphasis added). This court has defined "exemption" as "the freedom of property of debtors <u>from liability to seizure and sale under legal process for the payment of their debts</u>." *Clark v. Nirembaum,* 8 F.2d 451, 452 (5th Cir. 1925), (emphasis added) (citing 25 C.J. § 8 (now 35 C.J.S. § 1 (1960)), *cert. denied,* 270 U.S. 649 (1926). Similarly, bankruptcy courts have defined an "exemption" as a "'privilege allowed by law to a judgment debtor, by which he may hold property to a certain amount or certain classes of property, <u>free from all liability to levy and sale on execution or attachment</u>.'" *In re Komet,* 104 B.R. 799, 806 (Bankr. W.D. Tex. 1989) (emphasis added) (quoting BLACK'S LAW DICTIONARY 571 (5th ed. 1979).[12] *See also In re Hudspeth,* 92 B.R. 827, 830 (Bankr. W.D. Ark. 1988) (same); *In re Pritchard,* 75 B.R. 877, 878 (Bankr. D. Minn. 1987) (same). "Exemption" also has been defined as "a right given by law to a debtor to retain a portion

---

[12] The current definition of "exemption" in Black's Law Dictionary is "[a] privilege allowed by law to a judgment debtor, by which he may retain property to a certain amount or certain classes of property, free from all liability to levy and sale on execution, attachment, or bankruptcy." BLACK'S LAW DICTIONARY 571 (6th ed. 1990).

31

of his personal property free from seizure and sale by his creditors under judicial process." 31 AM. JUR. 2D *Exemptions* § 1 (1989).

This definition of exemption is critical to an understanding of the meaning of the word "liable" in 11 U.S.C. § 522:

> (c) Unless the case is dismissed, <u>property exempt under this section is not liable</u> during or after the case for any debt of the debtor that arose, or that is determined under Section 502 of this title as if such debt had arisen, before the commencement of the case, <u>except</u> --
>> (1) a debt of a kind specified in section . . . 523(a)(5) of this title.

The word "liable," as used in the section of the Bankruptcy Code entitled "Exemptions," means "liable to levy and sale on execution or attachment." *In re Komet,* 104 B.R. at 806. More specifically, the statutory reference to "liable," in the context of exemptions, means that property exempted by a debtor under "Federal law" or "State or local law" pursuant to § 522(b)(2)(A) is free from liability for seizure and sale by his or her creditor under judicial process <u>unless</u> the debt is, *inter alia,* a debt "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record." 11 U.S.C. § 523(a)(5). Because alimony and child support debts are an exception to the debtor's privilege to exempt certain property from seizure and sale (*see* discussion *infra* of "exceptions to exemptions"), it follows that the property is liable for seizure and sale by a former spouse with a judgment for alimony and child support that is nondischargeable under § 523(a)(5).

The majority asserts without any support in federal law that "liable" in § 522(c)(1) means only that an alimony and child support creditor can "perfect a judgment lien against the property. . . although it is immune from seizure." The majority cites only Texas law for the proposition that Congress intended "liable" in § 522(c)(1) as an esoteric proxy for "nondischargeable debt" and "nonavoidable lien."[13] "Liable" taken in its usual sense and

---

[13] *See* Maj. Op. at 17-18 & n.9.

as used in § 522, however, means "liable for seizure and sale" and not merely "liable to attachment by a nonavoidable but unenforceable lien." Section 522(c) of the Bankruptcy Code expressly abrogates a debtor's privilege allowed by state law by which he may hold property free from all liability to levy and sale under legal process for the payment of debts defined by § 523(a)(5). By denying the debtor this privilege of exemption for certain nondischargeable debts, § 522(c) permits the property to be seized and sold to satisfy these obligations.

## 2. Section 522's "Exception to Exemptions" For Family Support Debts

The Bankruptcy Code does not confer upon a debtor an absolute or unqualified right to exempt property from seizure and sale. Section 522 expressly makes nondischargeable debts for alimony, maintenance or child support an exception to the debtor's general privilege to exempt certain property from liability for seizure and sale. Thus, property exempted under § 522 is nevertheless liable for seizure and sale to satisfy debts specified in § 523(a)(1) (tax obligations) and § 523(a)(5) (child and spousal support). *See In re Citrone,* 159 B.R. 144, 146 (Bankr. S.D.N.Y. 1993). The majority uses circular and obverse reasoning in an attempt to show that Texas state exemption law (by virtue of Fed. R. Civ. P. 69(a)) "reverse preempts" federal court enforcement of judgments for nondischargeable alimony and support debts under § 522(c) of the Bankruptcy Code. To the contrary, however, Congress, by the specific terms of § 522 and its constitutional power, has superseded and preempted the effect of the state exemption law upon this particular kind of debt. While the Bankruptcy Code allows a debtor to claim state exemptions, it also revokes this privilege as to the debtor's nondischargeable child and spousal support obligations.

In addition to the numerous authorities cited above, other bankruptcy scholars and practitioners interpret 11 U.S.C. § 522(c) as establishing exceptions to the exemptions provided generally under § 522(b): The bankruptcy exemptions do not apply to protect property from seizure and sale to satisfy family support obligations. *See* Howard N. Cayne et al., *Overview of Comprehensive Thrift and Bank Fraud Prosecution Act of 1990 and the Enforcement Provisions of the Financial Institutions Reform, Recovery and Enforcement*

33

*Act of 1989, in* CIVIL AND CRIMINAL LIABILITY OF OFFICERS, DIRECTORS, AND PROFESSIONALS: BANK &

THRIFT LITIGATION IN THE 1990'S , at 545, 562-63 (PLI Comm. Law & Practice Course Handbook Series, PLI Order No. A4-4355, 1991) ("Under existing law, subsection (c) provides that the bankruptcy exemptions do not apply in the case of . . . alimony and child support payments."); *see also* John K. Villa & Robert M. Krasne, *A Preliminary Review of Banking Enforcement Provisions Contained in Title XXV of the Crime Control Act of 1990*, *in* CIVIL AND CRIMINAL LIABILITY OF OFFICERS, DIRECTORS, AND PROFESSIONALS: BANK & THRIFT LITIGATION IN THE 1990'S, at 597, 616 (PLI Comm. Law & Practice Course Handbook Series, PLI Order No. A4-4355, 1991) (Section 2522 of the Crime Control Act of 1990 "amends the U.S. Bankruptcy Code, 11 U.S.C. §§ 523, 522, 365, 507 and 101, to create (i) two additional exceptions to the discharge of indebtedness, through bankruptcy, [and] (ii) a new category of obligations to which property exemptions do not apply. . . ."). Significantly, section 2522(b) of the Crime Control Act of 1990, which amended 11 U.S.C. § 522(c), is entitled "EXCEPTION TO EXEMPTIONS." Crime Control Act of 1990, PL 101-647, 104 Stat. 4789, 4866 (Nov. 29, 1990); *see also In re Colonial Realty Co.,* 980 F.2d 125, 133 (2d Cir. 1992) (Section 2522 "add[ed] § 522(c)(3) as an additional exception to § 522 exemption").

One commentator has declared that "[a]t present, a person with a claim for alimony, support, or maintenance has a solution under bankruptcy law. . . . If the debtor becomes insolvent, and a voluntary or involuntary petition in bankruptcy is filed, the homestead will not be exempt from this type of prebankruptcy debt." Donna Litman Seiden, *There's No Place Like Home (Stead) in Florida -- Should It Stay That Way?,* 18 NOVA L. REV. 801, 859 (Winter 1994). The author's reasoning follows that of this dissenting opinion: Because the Bankruptcy Code has the effect of subordinating the exemption to certain debts, creditors with claims for alimony, maintenance, or support can reach exempt property, by means of a forced sale to satisfy this preferred debt, regardless of the state law exemption. *Id.* at 815 & n. 257.                    **3. Preemption**

To decide whether the Bankruptcy Code preempts the Texas homestead exemption laws, a court must begin by comparing § 522(c) with the state homestead constitutional and statutory provisions to determine if there is a conflict. Section 522(c) provides that during or after bankruptcy, exempt property is not liable for any debt that arose prepetition, or is deemed to have so arisen under § 502, except those debts specified in subparagraphs (1) through (3). See 11 U.S.C. §§ 522(c)(1) - (3). This list includes: (1) debts for certain taxes and customs duties; (2) debts for alimony, maintenance, or support; (3) liens that cannot be avoided; (4) liens that are not void; (5) tax liens; and (6) certain nondischargeable debts owed to federal depository institutions. *See id.*

Congress has plenary power to enact uniform federal bankruptcy laws. *See* U.S. CONST. art. 1, § 8, cl. 4; *International Shoe*, 278 U.S. at 265. Consequently, "[s]tates may not pass or enforce laws to interfere with or complement the Bankruptcy Act or to provide additional or auxiliary regulations." *International Shoe*, 278 U.S. at 265 (noting that the intent of Congress in establishing uniform bankruptcy laws necessarily excludes inconsistent state regulation). I recognize that Congress afforded significant deference to state law by allowing bankruptcy debtors to choose state exemptions and by further allowing states to opt out of the federal exemption scheme entirely. *See Weinstein,* 164 F.3d at 683 (citing *In re Boucher*, 203 B.R. 10, 12 (Bankr. D. Mass. 1996) (citing 11 U.S.C. § 522(b))). Yet, such deference does not warrant the conclusion that the detailed exceptions in § 522(c) to the general immunity from liability of the "property exempted" provided for by the same section must yield to or be controlled by the state exemption laws. As the Supreme Court recognized in discussing the interplay between § 522(f) and state exemption exceptions in *Owen*, the state's ability to define its exemptions is not absolute and must yield to conflicting policies in the Bankruptcy Code. *See Owen*, 500 U.S. at 313.

Only by adding a heavy Texas spin to gloss over the plain words and meaning of § 522(c) is the majority able to close its eyes to the obvious conflict between the state laws that exempt homestead property from liability to seizure and sale for alimony and child support debts and § 522(c)(1), which excepts nondischargeable alimony and child support

debts from the effects of that exemption.  The majority struggles to avoid acknowledging the conflict by theorizing that § 522(c)(1) does not mean what it says but strangely enough has a meaning that produces substantially the same result Texas courts have reached when a Texas court judgment creditor seeks to enforce her alimony and child support decree based solely on state law against the judgment debtor's homestead: The former spouse may have her lien attached to the property but she cannot enforce it until the debtor dies or abandons his homestead.[14]  In fact, as we have learned during the course of this case, under Texas law, she cannot enforce it against the proceeds of his sale of the homestead if he invests them in another Texas homestead within six months of the sale.[15]

The conflict between the Bankruptcy Code and the Texas homestead exemption laws, however, is too sharp and too real to be covered up by any amount of ingenious judicial gloss.  The state laws provide for an exemption of property from liability to seizure and sale for the owner's alimony and child support debts.  The federal bankruptcy law in § 522(c)(1) provides for an exception to that exemption of the same property from liability to seizure and sale for the debtor-owner's alimony and child support debts.

Consequently, there is a conflict between the state and federal laws.  Therefore, it must be concluded that the state homestead laws are preempted by the federal Bankruptcy Code.  State law is void to the extent it is in conflict with a federal statute.  *See Maryland v. Louisiana*, 451 U.S. 725, 747 (1981) and authorities cited therein.

### 4. Bankruptcy Court's Broad Enforcement Powers Under 11 U.S.C. § 105

The majority insists that the Bankruptcy Code provides no means by which federal courts can enforce a final judgment rendered by a bankruptcy court.

Section 105 of the Bankruptcy Code, however, plainly states:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any

---

[14] *See* Maj. Op. at nn.9–10.

[15] *See* Maj. Op. at n.10.

determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).[16]

This court has declared that "[t]he language of this provision is unambiguous. Reading it under its plain meaning, we conclude that a bankruptcy court can issue any order. . . necessary or appropriate to carry out the provisions of the bankruptcy code." *In re Terrebonne Fuel and Lube, Inc.,* 108 F.3d 609, 613 (5th Cir. 1997). The Supreme Court has declared that the "statutory directives [of § 105(a)] are consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships." *United States v. Energy Resources, Inc.,* 495 U.S. 545, 549 (1990). For example, a bankruptcy court has the authority under § 105 to void a debtor's exemption in order to compensate the estate for damage caused by the debtor's contempt of the court's orders. *In re Haddad,* 68 B.R. at 951.

One leading commentator on bankruptcy law characterizes § 105 as "an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case. The basic purpose of § 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of its jurisdiction." 2 L. KING, COLLIER ON BANKRUPTCY § 105.01, at 105-3 (1996). The second sentence of § 105(a) was expressly intended to broaden the authority of bankruptcy courts to act, sua sponte, to promote the Code's provisions. *See In re Kestell,* 99 F.3d 146, 148 (4th Cir. 1996) (citing 132 CONG. REC. S15074-05 (Oct. 3, 1986)).

In *In re Moody,* 837 F.2d 719 (5th Cir. 1988), this court held that pursuant to § 105, "a district court has jurisdiction to enforce [nondischargeable] judgments against property other than property of a bankruptcy estate. . . . This jurisdiction properly extends to an order in aid of collecting valid claims and judgments of the bankruptcy trustee against the

---

[16] Bankruptcy courts have inherent power to enforce settlement agreements between parties. *In re Haddad,* 68 B.R. 944, 953 (Bankr. D. Mass. 1987); *In re Bienart,* 48 B.R. 326, 328 (Bankr. N.D. Iowa 1985).

beneficiary of the trust." *Id.* at 723-24. More recently, under the authority of *Moody*, the district court in *Bass v. Denney,* No. 3:97-CV-2043-P, 1998 WL 59486 (N.D. Tex. Feb. 9, 1998), held that the bankruptcy court had the power and authority under § 105 to fashion remedies to assist a judgment creditor in enforcing or collecting a nondischargeable judgment obtained against a debtor entered pursuant to 11 U.S.C. § 523. *Id.* at *1-2.

The broad grant of authority conferred upon bankruptcy courts and district courts by 11 U.S.C. § 105 permits these courts to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Therefore, § 105 provides federal courts with a means of enforcing the bankruptcy court's judgment based on nondischargeable alimony, maintenance, and child support debts by ordering the debtor's homestead seized and sold to satisfy this nondischargeable, nonexemptible debt.

### 5. Assimilation of State Practices and Procedures

Federal Rule of Civil Procedure 69(a) provides that the procedure "on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, <u>except that any statute of the United States governs to the extent that it is applicable</u>." Fed. R. Civ. P. 69(a) (emphasis added). Thus, the emphasized exception makes any applicable federal statute controlling, as well as any relevant civil rule, because those rules have the force of a statute. 12 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE §3012, at 142 (1997) (citing *Gary W. v. State of La.*, 622 F.2d 804 (5th Cir. 1980) (district court had power to order Secretary of Louisiana Department of Health and Human Resources to pay money judgment from Department funds even though Louisiana Constitution prohibited payment of judgment against state except from funds appropriated for such purpose by legislature), *cert. denied*, 450 U.S. 994 (1981)).

Section 105 of the Bankruptcy Code is a fitting, fully applicable, and, therefore, controlling federal statute authorizing the bankruptcy court to enforce its judgment. Consequently, Federal Rule of Civil Procedure 69(a), and state practice and procedure adopted thereby, do not prevent a federal court from using whatever means are necessary

to guarantee compliance with its judgments. The Fourth Circuit aptly summed up the relationship between state procedural vehicles and federal statutes as follows:

> Even though we look to state law to determine the practice and procedure to be followed in the execution of a judgment, we do so in furtherance of federal law, giving effect to rules entitling parties to enforce federal judgments in federal courts. <u>Consequently, any aspects of the assimilated practices and procedures that are uniquely designed to enforce state judgments are not assimilated, nor is any aspect that may be inconsistent with the federal policy of affording judgment creditors the right to a writ of execution to enforce money judgments in federal courts</u>.

*United States v. Harkins Builders, Inc.,* 45 F.3d 830, 833 (4th Cir. 1995) (emphasis added) (citing 12 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3012, at 69 (1973)).[17] Consequently, a debtor cannot accomplish "through the back door," ostensibly under Rule 69(a), what cannot be accomplished under the federal Bankruptcy Code: invoking state exemption laws to immunize or protect homestead property from seizure and sale to satisfy nondischargeable, nonexemptible child and spousal support debts.

### III. Conclusion

The Bankruptcy Code provides that the commencement of a voluntary bankruptcy case creates an estate comprised of legal and equitable interests of the debtor in property, wherever located and by whomever held. 11 U.S.C. § 541. Under the Code, an individual debtor has a qualified right, under defined circumstances, to exempt from the estate the same property that is exempt from levy under state, local, and nonbankruptcy federal law. 11 U.S.C. § 522(b)(2)(A). Property that is exempted from the estate is immunized against liability for prebankruptcy debts, subject to the exception of, *inter alia*, debts for alimony,

---

[17] More than 150 years ago, the Supreme Court declared that early federal acts, which prescribed that modes of process and proceedings in execution in state court should be applicable to federal courts in those states, did not manifest legislative intent to defeat the execution of judgments rendered in the courts of the United States. *Duncan v. Darst,* 42 U.S. 301, 306 (1843).

maintenance, child support, taxes and other liabilities specified by the Code. 11 U.S.C. § 522(c). The debtor's qualified right to exempt property from the estate, and the relationships between the debtor, his creditors, and exempted or non-exempted property with regard to prebankruptcy debts, are governed exclusively by federal law. Consequently, it is clear that the provisions of the state homestead exemption law that seek to immunize the debtor's homestead against liability to seizure and sale for nondischargeable alimony and support debts conflict with and have been superseded by the Bankruptcy Code. The state law cannot alter the obligations of a bankruptcy debtor and his creditors as provided for by federal bankruptcy law. See *International Shoe*, 278 U.S. at 265; *In re John Taylor Co.*, 935 F.2d 75, 78 (5th Cir.1991). For these reasons, the state homestead exemption laws are inoperative against the debtor's former spouse in this case and she is entitled under the Bankruptcy Code to proceed against the debtor's otherwise exempted property to satisfy her alimony, maintenance, and child support judgment. Accordingly, the judgments below should be vacated and the case should be remanded to the bankruptcy court with directions to allow the appellant to obtain a writ of execution and all other relief to which she is entitled by law.